IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEVIN L. ALLEN,<br><br>      Petitioner,<br><br>vs.<br><br>SCOTT FRAKES, Director NDCS;<br><br>      Respondent. | 8:19CV212<br><br>MEMORANDUM AND ORDER |

  This matter is before me on Respondent's Motion for Summary Judgment (filing 14) claiming that Petitioner Kevin L. Allen's Amended Petition for Writ of Habeas Corpus (filing 12) must be dismissed because it is barred by the limitations period set forth in 28 U.S.C. § 2244(d). I agree and will dismiss the petition with prejudice. Consequently, Allen's request for leave to file a response to Respondent's reply brief (filing 24), construed as a motion, is denied.

## I. FACTS

  1. On March 22, 1996, Allen was convicted by a jury in the District Court of Douglas County, Nebraska ("state district court") of first degree murder and use of a firearm to commit a felony. (Filing 15-3 at CM/ECF p. 2.) The state district court sentenced Allen to life in prison on the murder charge and to a consecutive term of 19 to 20 years' imprisonment on the firearm charge. (*Id.* at CM/ECF pp. 12–13.)

  2. On March 28, 1997, the Nebraska Supreme Court affirmed Allen's convictions and sentences on direct appeal. (Filing 15-1 at CM/ECF p. 4.); *State v. Allen*, 560 N.W.2d 829 (Neb. 1997) ("*Allen I*"), *disapproved in part*, *State v. Myers*, 603 N.W.2d 378 (Neb. 1999). Allen filed a motion for rehearing, which was overruled on April 16, 1997. (Filing 15-1 at CM/ECF p. 4.)

3. In October 2007, Allen filed a pro se motion for postconviction relief in the state district court. (Filing 15-3 at CM/ECF pp. 23–39.) An amended postconviction motion was filed by counsel on July 1, 2016. (*Id.* at CM/ECF pp. 40–57.) The state district court denied postconviction relief without an evidentiary hearing. (*Id.* at CM/ECF pp. 61–70.)

4. Allen prosecuted an appeal to the Nebraska Supreme Court which affirmed the state district court's judgment on November 16, 2018. (Filing 15-2 at CM/ECF p. 4.); *State v. Allen*, 919 N.W.2d 500 (Neb. 2018) ("*Allen II*"). The mandate was issued on December 6, 2018. (Filing 15-2 at CM/ECF p. 4.)

5. Allen's habeas petition was filed with this court on May 13, 2019. (Filing 1.) Subsequently, Allen was granted leave to file an amended habeas petition which he did on January 8, 2020. (Filing 12.)

## II. DISCUSSION

Respondent submits that Allen's habeas petition must be dismissed because it was not timely filed and is barred by the limitations period set forth in 28 U.S.C. § 2244(d). I agree.

**A. One-Year Limitations Period**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, establishes a one-year limitations period for state prisoners to file for federal habeas relief that runs from the latest of four specified dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United

> States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). However, the statute of limitations period is tolled while a state post-conviction or other collateral review is pending. *King v. Hobbs*, 666 F.3d 1132, 1135 (8th Cir. 2012) (citing 28 U.S.C. § 2244(d)(2)).

Here, Allen's conviction became final on July 15, 1997, which is ninety days after the Nebraska Supreme Court denied Allen's motion for rehearing on direct appeal and Allen's deadline to petition for a writ of certiorari with the United States Supreme Court expired. *See Gonzalez v. Thaler*, 656 U.S. 134, 150 (2012) (holding that, for petitioners who do not pursue direct review all the way to the United States Supreme Court, a judgment becomes final "when the time for pursuing direct review in [the Supreme Court], or in state court, expires."); *King*, 666 F.3d at 1135 ("If the Supreme Court has jurisdiction to review the direct appeal, the judgment becomes final ninety days after the conclusion of the prisoner's direct criminal appeals in the state system.") (citing Sup. Ct. R. 13.1). Accordingly, the one-year limitations period began to run from July 15, 1997.

Allen's filing of his motion for postconviction relief in state district court in October 2007 did not toll the limitations period because it had already expired. *See Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001) (holding "the time between the date that direct review of a conviction is completed and the date that an application for state post-conviction relief is filed counts against the one-year period"). Thus, Allen had until July 15, 1998 to file his habeas petition. He did not

file it until over twenty years later on May 13, 2019. Allen's habeas petition is untimely under § 2244(d)(1)(A).

**B. Equitable Tolling and Actual Innocence**

Allen does not dispute that his habeas petition was untimely filed. However, the allegations of his amended petition and the arguments raised in his brief require me to consider whether equitable tolling or the miscarriage of justice exception apply to avoid the statute of limitations bar. Upon careful consideration, I conclude that they do not.

Liberally construed, Allen alleges that he is entitled to equitable tolling. (Filing 12 at CM/ECF pp. 14–15.) Generally, a litigant seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Walker v. Norris*, 436 F.3d 1026, 1032 (8th Cir. 2006). Equitable tolling is proper "only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Runyan v. Burt*, 521 F.3d 942, 945 (8th Cir. 2008) (internal quotation marks omitted). As such, "equitable tolling is an exceedingly narrow window of relief." *Id.* (internal quotation marks omitted). The burden of demonstrating grounds warranting equitable tolling rests with the petitioner. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Here, Allen has failed to meet that burden.

In his amended petition, Allen alleges that when he began his sentence, he "dealt with a lot of shock, depression and pessimism" and spent several years "in and out of the 'hole'" adjusting to prison life. (Filing 12 at CM/ECF p. 14.) Allen also alleges he "got advice from legal aides and professional lawyers to literally take a couple of years to research and study the law because at that time there were

no statute of limitations on postconviction filings."[1] (*Id.* at CM/ECF pp. 14–15.) None of these allegations present extraordinary circumstances that prevented Allen from pursuing federal habeas relief nor has Allen demonstrated that he has been pursuing his rights diligently. Therefore, Allen has not presented the court with any reason to warrant the application of equitable tolling to the limitations period.

Allen's primary argument is that he is actually innocent and, thus, the miscarriage of justice exception applies to excuse his untimely filed petition. In *McQuiggins v. Perkins*, 133 S. Ct. 1924, 1928 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage of justice exception. To invoke the miscarriage of justice exception, a petitioner must support his allegations of actual innocence with "new, reliable evidence" that was not presented at trial and must show that it was more likely than not that, in light of the new evidence, no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 329. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. U.S.*, 523 U.S. 614, 623 (1998) (citation omitted). The actual innocence standard is a "demanding" one, and "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316).

Allen was convicted by a jury of first degree murder and use of a deadly weapon to commit a felony for the August 20, 1995 shooting death of Omaha police officer James B. "Jimmy" Wilson, Jr. The Nebraska Supreme Court set out detailed summaries of the evidence adduced at Allen's jury trial in both its opinions on direct appeal and postconviction, which I have reviewed and will not

---

[1] The statute of limitations to which Allen refers pertains to Nebraska state postconviction proceedings which were not subject to a limitations period until 2011. *See* Neb. Rev. Stat. § 29-3001(4) (West 2020).

repeat here. *Allen I*, 560 N.W.2d at 834–36; *Allen II*, 919 N.W.2d at 505–09. In claiming actual innocence, Allen mainly rehashes arguments and evidence known to him at the time of trial. (Filing 12 at CM/ECF pp. 10–11.) However, such assertions cannot form the basis of an actual-innocence gateway claim.

In his brief, Allen also argues the merits of his Confrontation Clause claim and contends that "[c]oupled with the state's and the Nebraska Supreme Court's view of the evidence as a whole, the record clearly establishes that but for the constitutional violation of the confrontation clause, no reasonable factfinder would have found Allen guilty of the underlying offense." (Filing 22 at CM/ECF p. 10.) Allen's argument misunderstands both Respondent's and the Nebraska Supreme Court's representation of the evidence.

As Respondent points out in his brief (filing 16 at CM/ECF pp. 4–5), the jury at Allen's trial was clearly aware that his defense theory was that he was innocent and that Quincy Hughes was the shooter. The jury knew that Allen had not been identified as the shooter by eyewitnesses, but that Hughes had. The jury knew that witnesses Simmons and Perry had been inconsistent on whether the shooter was Allen or Hughes. The jury was also aware that the State had originally charged Hughes with the murder. Similarly, the Nebraska Supreme Court highlighted these same evidentiary circumstances when it upheld the trial court's exclusion of Allen's proffered evidence regarding the State's initial prosecution of Hughes, saying:

> What the prosecution believed at the time of Hughes' preliminary hearing, as evidenced by its argument, the information filed, and the docket sheet, is not relevant because this proffered evidence does not have the tendency to make it more or less probable that Allen shot Wilson. What is relevant is the testimony of the eyewitnesses that picked Hughes out of a lineup as the shooter and the statements made by Simmons and Perry to the police that Hughes was the shooter, because this evidence has the tendency to make it less probable that Allen shot Wilson.

6

*Allen I*, 560 N.W.2d at 843.

Allen misconstrues the Nebraska Supreme Court's above statement as demonstrative of his innocence when, in reality, the court's statement was clearly made in the context of discussing evidence relevant to the question of whether or not Allen shot Wilson. The jury was presented with all of the foregoing evidence and testimony and found Allen guilty, and Allen's invitation for this court to re-examine or reweigh this evidence does not warrant opening of the actual innocence gateway.

Rather, as stated above, Allen must present new, reliable evidence of actual innocence that was not presented at trial. Allen alleges two claims of new evidence to support his actual innocence claim. First, Allen alleges that David Kofoed, the former supervisor of the Crime Scene Investigation Division for the Douglas County, Nebraska sheriff's office, who testified in Allen's case, was later convicted of planting evidence and falsifying reports in a different case thus raising doubts about the "integrity of the factfinding process." (Filing 22 at CM/ECF p. 12.) As the Nebraska Supreme Court found, however, Kofoed's testimony at Allen's trial "showed that he did not play a major role in the evidence which led the jury to convict Allen." *Allen II*, 919 N.W.2d at 514. Kofoed took measurements at the crime scene, but he did not indicate that he collected any evidence, nor did he mention Allen in his testimony. *Id*. Rather, Kofoed "merely provided a description of the scene and laid foundation for the admission of a photograph of the police cruiser." *Id*. Given Kofoed's limited role in Allen's case, I do not find that Kofoed's actions in a later case support Allen's actual innocence claim.

Next, Allen alleges that the "integrity of the fingerprint identification process" in his case has been called into question due to the admission of Omaha Crime Lab technician Sarah Meyer that she misidentified a fingerprint in a 2012 burglary case and two other technicians not only failed to catch the misidentification but verified the misidentification as correct. (Filing 22 at

7

CM/ECF p. 12.) In considering this claim on Allen's postconviction appeal, the Nebraska Supreme Court concluded:

> Here, Allen's broad and generalized allegations do not include any factual support to suggest that his fingerprints were misidentified. In addition, Allen has failed to demonstrate that had the jury been prohibited from considering the fact that nine latent fingerprints of Allen's were found in the van, the jury would not have still convicted him based on eyewitness testimony.

*Allen II*, 919 N.W.2d at 514. I concur with the Nebraska Supreme Court's analysis. Allen's generic attack on the fingerprint evidence in his case based on unrelated faulty fingerprint analysis conducted approximately sixteen years after Allen was convicted falls far short of meeting the rigorous standard set forth in *Schlup*.

Allen has presented no new, reliable evidence of actual innocence in this case. Thus, Allen has not satisfied the requisite elements to excuse the procedural bar of the one-year statute of limitations through any "gateway" claim of actual innocence, and his petition will be dismissed with prejudice.

### III. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on a petition for writ of habeas corpus under § 2254 unless granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). I have applied the appropriate standard and determined that Allen is not entitled to a certificate of appealability.

IT IS THEREFORE ORDERED that:

1. Respondent's Motion for Summary Judgment (filing 14) is granted.

2. Petitioner's habeas petition (filing 12) is dismissed with prejudice because it is barred by the limitations period set forth in 28 U.S.C. § 2244(d).

3. Petitioner's request for permission to file a surreply (filing 24), construed as a motion, is denied.

4. The court will not issue a certificate of appealability in this matter.

5. A separate judgment will be entered.

Dated this 28th day of August, 2020.

                                              BY THE COURT:

                                              *Richard G. Kopf*

                                              Richard G. Kopf
                                              Senior United States District Judge